UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| HARLIE L. WHITNEY | * | CIVIL ACTION NO.  08-1855 |
| VERSUS | * | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment.  For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

On March 15, 2006, Harlie Whitney protectively filed the instant application for Title II Disability Insurance Benefits.  (Tr. 156).[1]  He alleged disability since November 7, 2003, because of a torn right rotator cuff/nerve damage on the right shoulder; depression; anxiety; panic attacks; severe tendinitis in the left arm; occasional left hand stiffness; constant right shoulder pain; inability to lift or carry objects; loss of appetite; and unsociableness.  (Tr. 94, 103). The state agency denied the claim initially and upon reconsideration.  (Tr. 59-60, 63-67, 69-72).

---

[1]  On April 6, 2005, the state agency denied a prior, September 28, 2004, application.  (Tr. 94-96, 111).  There is no indication that this denial was further appealed.

Thereafter, Whitney requested and received a November 7, 2007, hearing before an Administrative Law Judge ("ALJ"). ( Tr. 26-58). However, in a May 6, 2008, written decision, the ALJ determined that Whitney was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that he was able to return to his past relevant work as a retail sales manager. (Tr. 11-22). Whitney appealed the adverse decision to the Appeals Council. Nevertheless, on September 26, 2008, the Appeals Council denied Whitney's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On November 28, 2008, Whitney sought review before this court. He alleges the following errors:

1)  the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(2)  the ALJ's Step Four determination is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a

preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be

>> found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Whitney did not engage in substantial gainful activity during the relevant period. (Tr. 16). At Step Two, he found that Whitney suffers severe impairments of right shoulder injury and affective disorder.

(Tr. 16).[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 18-19).

## II.     Residual Functional Capacity Assessment

The ALJ determined that Whitney retained a residual functional capacity consistent with the full range of light work. (Tr. 19).[3] In so deciding, the ALJ stated that he accorded great weight to the residual functional capacity assessments completed by the state agency medical consultants in the case. (Tr. 21).[4] The ALJ further remarked that the moderate limitations imposed by the agency medical consultants were supported by the record as a whole. *Id*.

---

[2] In his application of the psychiatric review technique, the ALJ inexplicably determined that Whitney's affective disorder was *non-severe*. (Tr. 18). Ultimately, however, this inconsistency proves harmless. The functional limitations imposed by the alleged mental impairment do not impair the ALJ's Step Four determination. *See* discussion, *infra*. Moreover, plaintiff does not contend that his mental impairment meets or equals a listing.

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] "An ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990)).

Understandably, plaintiff questions the sufficiency and consistency of the ALJ's residual functional capacity assessment because it did not specifically include the limitations recognized by the agency medical consultants.

In this regard, the court observes that on August 28, 2006, a non-examining agency psychologist, Donald Cochran, Ph.D., completed a Mental Residual Functional Capacity Assessment, premised, in part, upon a July 24, 2006, psychiatric evaluation administered by John O'Donnell, M.D. (Tr. 230-237, 256-259). Cochran found that plaintiff's mental impairment(s) imposed moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and to perform activities on a regular, punctual schedule. (Tr. 256-259).

On August 31, 2006, a non-examining agency physician, Virgilio Pilapil, M.D., completed a medical source statement wherein he indicated that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight hour day, with unlimited pushing and pulling. (Tr. 260-267).[5] Pilapil further found that Whitney can occasionally perform postural activities, but can only occasionally reach overhead, with the right upper extremity. *Id*. Whitney also should avoid concentrated exposure to fumes, odors, dusts, gases, and hazardous machinery or heights. *Id*.

It is well within the ALJ's prerogative to conclude, as he implicitly did here, that occasional postural limitations do not significantly erode the occupational base for light work. *See McCuller v. Barnhart*, 72 Fed. Appx. 155, 160-161 (5th Cir. Aug. 15, 2003) (unpubl).

---

[5] Pilapil relied upon a July 24, 2006, internal medicine consultative examination administered by Alexander Panagos, M.D. (Tr. 238-241)

Similarly, the need to avoid concentrated exposure to extreme heat, humidity or air pollutants, and work at heights or around dangerous moving machinery, also does not significantly impact a claimant's work capacity. *Guillory v. Barnhart*, Civil Action Number 03-0775 (W.D. La. 3/12/04 Report & Recommendation; 4/22/04 Judgment) (citing SSR 85-15), *affirmed*, 129 Fed. Appx. 873 (Mar. 17, 2005) (unpubl.).

Insofar as the ALJ's residual functional capacity assessment erroneously omitted the mental limitations recognized by Dr. Cochran and the occasional overhead lifting restriction, any error was harmless because the ALJ substantially incorporated these additional limitations in a hypothetical to the vocational expert who opined that the limitations would not impact plaintiff's ability to perform his past relevant work as a retail store manager. *See* Tr. 53-54; *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights); *see also* discussion, *infra*.

## III.    Step Four

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Whitney was able to return to his past relevant work as a retail store manager. (Tr. 53-55).[6]

---

[6] In a footnote, plaintiff points out that the VE's opinion that the retail store manager position is performed at the light exertional level seemingly conflicts with a functional job analysis of plaintiff's prior work referenced in an April 2005 functional capacity evaluation. (Tr. 276). However, the Dictionary of Occupational Titles agrees that the position of retail store manager is a light job. *See* DOT # 185.167-046. In addition, the likely explanation for the discrepancy is that the functional job analysis considered plaintiff's prior work as he actually performed it, as opposed to how the job is generally performed in the national economy. Of course, for purposes of Step Four, past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers

Plaintiff contends that the ALJ's Step Four determination is materially tainted because the VE's opinion regarding the benign impact of occasional difficulty with the ability to grasp or grip conflicts with the Dictionary of Occupational Titles' assessment of the retail store manager position. However, the ALJ did not include any handling or fingering limitations in his residual functional capacity assessment – a determination that is supported by substantial evidence. (Tr. 263). Thus, the inclusion of this limitation in the hypothetical was superfluous, and any alleged error in the VE's resulting opinion because of this uncredited limitation is irrelevant and immaterial.

In any event, the VE and the ALJ identified other occupations that exist in substantial numbers in the national economy that plaintiff could perform, despite his limitations. (Tr. 22, 55).[7] This essentially alternative Step Five determination provides additional grounds to support the ALJ's decision that plaintiff was not disabled during the relevant period.[8]

## IV.   Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and remains free of legal error. Accordingly,

---

throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61). In other words, the discrepancy proves illusory.

[7] The two representative jobs identified by the VE at the light exertional level included motel clerk and gate guard. (Tr. 54-55). There are more than 1,900 jobs for each title in Louisiana. *Id*. These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number). Plaintiff concedes that these alternative jobs do not require frequent reaching or handling. (Pl. Brief, pgs. 6, 4 n.8).

[8] The court is heartened to note that at least as of the date that plaintiff filed suit herein, his limitations did not prevent him from working, albeit not at the presumptively substantial gainful activity level. *See* Application to Proceed In Forma Pauperis [doc. # 2].

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of March 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE